1

2

3

4

5

6

7

8

9                      IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11  JOHN M. GARDNER and SUSAN L.   )
    GARDNER, husband and wife,     )
12  and MT. HOOD POLARIS, INC.,    )
    an Oregon corporation,         )
13                                 )      No.  CV-05-769-HU
                     Plaintiffs,   )
14                                 )
            v.                     )
15                                 )
    TOM MARTINO, dba *THE TOM*     )
16  *MARTINO SHOW*, WESTWOOD ONE,  )
    INC., a Delaware corporation,  )      FINDINGS & RECOMMENDATION
17  and CLEAR CHANNEL COMMUNI-     )
    CATIONS, INC., a Texas cor-    )
18  poration,                      )
                                   )
19                     Defendants. )
    ───────────────────────────────)
20

21  Linda L. Marshall
    PMB 408
22  3 Monroe Parkway, Suite P
    Lake Oswego, Oregon 97035

23          Attorney for Plaintiffs

24  Charles F. Hinkle
    Brad S. Daniels
25  STOEL RIVES LLP
    900 S.W. Fifth Avenue, Suite 2600
26  Portland, Oregon 97204

27          Attorneys for Defendants Tom Martino & Westwood One, Inc.

28  / / /

1 - FINDINGS & RECOMMENDATION

Duane A. Bosworth
Kevin H. Kono
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201

    Attorneys for Defendant Clear Channel Communications, Inc.

HUBEL, Magistrate Judge:

    Plaintiffs John Gardner, Susan Gardner, and Mt. Hood Polaris, Inc., brought this tort action against defendants Tom Martino, dba The Tom Martino Show, Westwood One, Inc., and Clear Channel Communications, Inc.  Plaintiffs brought claims for false light invasion of privacy, defamation, intentional interference with economic relations, and intentional interference with prospective economic advantage.  All of plaintiffs' claims arose out of statements made by Martino, a syndicated radio talk show host, during an on-air broadcast, about Mt. Hood Polaris, which is owned and operated by John and Susan Gardner.

    Defendants moved to "strike" all claims pursuant to Oregon's "Anti-SLAPP" statute, Oregon Revised Statute § (O.R.S.) 31.150.  In a September 19, 2005 Findings & Recommendation, I recommended that defendants' motions be granted.  In a December 13, 2005 Order, Judge Brown adopted the Findings & Recommendation.  A Judgment of Dismissal was entered on that same date.

    On December 23, 2005, defendants moved for awards of attorney's fees.  Also on December 23, 2005, plaintiffs moved to amend Judge Brown's Order and the Judgment, and sought to amend the Complaint.  I stayed defendants' attorney's fee motions pending resolution of plaintiffs' motion by Judge Brown.

    On April 12, 2006, Judge Brown denied plaintiffs' motions. Subsequently, defendants filed supplemental motions for attorney's

2 - FINDINGS & RECOMMENDATION

fees.  Plaintiffs have responded to both the original attorney's fee motions and the supplemental motions.  I recommend granting the motions in part and denying them in part.

STANDARDS

In a diversity case, the availability and amount of attorney's fees are governed by state law.  Elston v. Toma, No. CV-01-1124-KI, 2005 WL 696900, at *1 (D. Or. Mar. 24, 2005).  Here, state law provides that "[a] defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs."  O.R.S. 31.152(3).

Under Oregon law, attorney's fees are to be awarded following the factors specified in O.R.S. 20.075.  Elston, 2005 WL 696900, at *1-2.  Although set out in two separate subsections, the statute requires the court to examine the following factors in determining an appropriate fee.  First are the factors recited in O.R.S. 20.075(1):

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
> (c) The extent to which the award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

3 - FINDINGS & RECOMMENDATION

O.R.S. 20.075(1); Elston, 2005 WL 696900, at *1-2 (citing Preble v. Department of Rev., 331 Or. 599, 602, 19 P.3d 335 (2001)).

Next, the court must consider eight additional factors as specified in O.R.S. 20.075(2):

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
> (c) The fee customarily charged in the locality for similar legal services.
> (d) The amount involved in the controversy and the results obtained.
> (e) The time limitations imposed by the client or the circumstances of the case.
> (f) The nature and length of the attorney's professional relationship with the client.
> (g) The experience, reputation and ability of the attorney performing the services.
> (h) Whether the fee of the attorney is fixed or contingent.

O.R.S. 20.075(2); Elston, 2005 WL 696900, at *2 (citing McCarthy v. Oregon Freeze Dry, Inc., 327 Or. 185, 188, 957 P.2d 1200 (1998)).

As Judge King explained in Elston:

> The objection of the party opposing an award of attorneys' fees should "play an important role in framing any issues that are relevant to the court's decision." [McCarthy, 327 Or. at 188, 957 P.2d 1200]. A court must include in its order a brief description of or citation to the factors on which it relies when granting or denying an award of attorney's fees. Id. A court is under no obligation however, to make findings about irrelevant or immaterial factual matters or legal criteria. Id.
> Even if there is no objection to either the rate or the hours, the court has an independent duty to review the petition for reasonableness. Gates v. Deukmejian, 987 F.2d 1392, 1401 (9th Cir. 1993). To determine the reasonable hourly rate, this court uses the most recent Oregon State Bar Economic Survey . . . as its initial benchmark, taking into consideration any adjustment for inflation between the date the economic survey was published and the dates the legal services were performed.

4 - FINDINGS & RECOMMENDATION

1  <u>Elston</u>, 2005 WL 696900, at *2 (footnote omitted).

2                              DISCUSSION

3          Martino and Westwood were both represented in this action by

4  Charles Hinkle and Brad Daniels of Stoel Rives, LLP.  They move for

5  an award of $84,024 in fees for the initial motion to dismiss, and

6  for an additional fee award of $28,984.50, for work done in regard

7  to plaintiffs' post-judgment motions, for a total of $113,008.50.

8          Clear Channel was separately represented by Duane Bosworth and

9  Kevin Kono of Davis Wright Tremaine, LLP.  Clear Channel seeks an

10  award of $19,251 in fees for the initial motion to dismiss, and

11  seeks an additional fee award of $17,257.50, for work done in

12  regard to plaintiffs' post-judgment motions, for a total of

13  $36,508.50.

14  I.  Entitlement to Fees

15          As defendants note, O.R.S. 31.152(3) mandates an award of fees

16  for a defendant who prevails on a special motion to strike made

17  under O.R.S. 31.150.  Although O.R.S. 20.075 suggests that a court

18  should examine the factors in O.R.S. 20.075(1) in initially

19  assessing the propriety of a fee award, those factors apply only

20  when the "court has discretion to decide whether to award attorney

21  fees."  O.R.S. 20.075(1).  Here, O.R.S. 31.152(3), by use of the

22  word "shall," directs the court to make an award of fees without

23  discretion, other than as to the reasonableness of the amount.

24  Thus, I do not apply the O.R.S. 20.075(1) factors to determine

25  whether to make an award.  They are used only as factors in

26  determining the reasonable amount to be awarded.

27          Plaintiffs concede defendants' entitlement to fees.  However,

28  plaintiffs take issue with the amount claimed.

5 - FINDINGS & RECOMMENDATION

II.  O.R.S. 20.075(1) Factors

Defendants contend only five of the eight subsection (1) factors are relevant:  the objective reasonableness of the claims under (1)(b), the deterrence of meritorious or meritless claims under (1)(c) and (1)(d), the objective reasonableness during the proceedings under (1)(e), and the reasonableness and diligence in pursuing settlement under (1)(f).  The only one addressed by plaintiff is the deterrence of meritorious cases under (1)(c).  I agree with the parties that the other subsection (1) factors are not relevant or applicable here.

A.  O.R.S. 20.075(1)(b)

Defendants urge the court to consider that after counsel for Martino and Westwood sent a copy of the proposed special motion to strike to plaintiffs' counsel, plaintiffs filed an amended complaint which still contained meritless claims.  Thus, defendants note, plaintiffs had an opportunity to eliminate those meritless claims before defendants even filed their motion, and did not do so.

Moreover, defendants state, in responding to the motion to strike, plaintiffs made no defense of their claim that Martino defamed them by saying "these people suck," they conceded that a corporation cannot bring a privacy claim, and their own employees' declarations indicated that Martino had tried to call plaintiffs three times during the program in an attempt to get their side of the story.  Defendants argue that the facts that plaintiffs did not attempt to justify their false light claim for the corporation or their libel claim based on the word "suck," and had no evidence of actual malice, show that at least some of plaintiffs' claims were

6 - FINDINGS & RECOMMENDATION

1  not objectively reasonable.

2      While I find no error in defendants' recitation of the facts

3  regarding the timing of the filing of the amended complaint or the

4  arguments plaintiffs made, or failed to make, in opposition to the

5  motion to strike, I do not agree with defendants' conclusion that

6  as a result of these undisputed facts, plaintiffs' claims must be

7  seen as objectively unreasonable.

8      Plaintiffs' false light claim was brought against all three

9  defendants.  Plaintiffs' concession that it could not sustain the

10 false light claim brought by the corporation does not undermine the

11 reasonableness of the claim brought by the two individuals.  While

12 the evidence may be undisputed that Martino tried to call

13 plaintiffs three times during the show to allow their response to

14 the complaint being made against them, that is not a definitive

15 determination of Martino's reckless conduct, but is a fact relevant

16 to the analysis.  Finally, while plaintiff chose not to rely on the

17 comment using the word "sucks" in opposing defendants' motion as to

18 the defamation claim, plaintiffs expressly reserved the right to

19 rely on it later in litigation and, more importantly, the claim was

20 based on several comments and thus, it was not objectively

21 unreasonable for plaintiff to pursue it after reading defendants'

22 proposed motion.

23      B.  O.R.S. 20.175(1)(c) and (1)(d)

24      Defendants argue that an award of attorney's fees would not

25 deter meritorious claims because, by definition, a motion to strike

26 under the anti-SLAPP statute is granted only when the claim lacks

27 merit.  Defendants contend that an award of attorney's fees would

28 operate to deter meritless claims, which is the very purpose of the

7 - FINDINGS & RECOMMENDATION

statute: "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1109 (9th Cir. 2003).

The problem with defendant's argument is that O.R.S. 20.175(1)(c) and (1)(d), like all of the O.R.S. 20.175 factors, apply to all cases in which an award of attorney's fees may be made, not just those in which an Anti-SLAPP motion to strike has been litigated. Because the Anti-SLAPP statute allows for early dismissal of claims that might otherwise not be subject to dismissal on a Rule 12(b)(6) motion, the merits of the claims but for the Anti-SLAPP context is never assessed. Thus, I conclude that the factors in O.R.S. 20.175(1)(c) and (1)(d) are of minimal importance in analyzing a fee request made under O.R.S. 31.152(3).

If I more fully consider the factors, I agree with plaintiffs that the requested amount is so large that it will likely deter meritorious claims. Plaintiffs note that two of the largest media companies in the country seek a "stunning" $103,275[1] from the individual plaintiffs and their small, family run business located in Boring, Oregon. Plaintiffs argue that a fee award in an "amount anywhere close to the amount sought here would deter any victim of defamation by a media defendant from contemplating an action for damages no matter how meritorious the claim, no matter how egregious the conduct, and no matter how devastating the result, because the consequence of seeking help from the courts could be

---

[1] This is the total amount sought in the initial attorney's fees motions, not considering the additional amounts sought in the supplemental motions.

utter financial devastation."  Pltfs' Obj. at p. 7.

I agree with plaintiffs.  The court must evaluate the relative balance between deterring meritless claims on the one hand and preserving the right to pursue meritorious claims on the other. While a fee award of some amount may be warranted in a particular case, one that goes too far will invariably deter not only claims without merit, but claims with merit as well, simply because the risk that some court, somewhere, might disagree with the claimant and conclude that the claim lacks merit, is too great given that the plaintiff could be subject to complete financial ruin as a result of filing the claim.  Defendants' combined total request of $149,517 is unreasonable because it tips that balance much too far against putative plaintiffs with meritorious claims and it could result in encouraging tortious behavior by those with far greater financial resources.

I note that in a 2004 decision, Judge Hogan explained that a large award may "discourage others from filing meritorious claims, while a small award may encourage meritless claims and/or frustrate the purposes of the anti-SLAPP statute."  Card v. Pipes, No. CV-03-6327-HO, 2004 WL 1403007, at *4 (D. Or. June 22, 2004).  He concluded that the requested amount of $58,712.90 for 268.6 hours spent on an anti-SLAPP motion directed at a three-claim complaint, was unreasonable.  Id. at *2.  He awarded $5,000 as a reasonable fee.  Id. at *4.  Here, the amount sought, $149,517, like the $58,712.90 in Pipes, is unreasonably high.  These factors, when examined, weigh in favor of plaintiff.

C.  O.R.S. 20.075(1)(e)

Defendants contend that plaintiffs' position on the issue of

9 - FINDINGS & RECOMMENDATION

1  whether Martino's statements constituted conduct in furtherance of
2  the exercise of the constitutional right of free speech within the
3  meaning of O.R.S. 31.150(2)(d), was objectively unreasonable given
4  that  the  Ninth  Circuit  had  applied  the  California  Anti-SLAPP
5  statute to pure speech and two California courts had applied the
6  California statute to on-air conversations on radio talk shows.

7      I disagree.  While the cases construing California's statute
8  were  relevant  and  troubling  for  plaintiffs,  they  were  not
9  determinative of Oregon law.  As the parties know, at the time the
10 motion  to  strike  was  briefed  and  argued,  there  were  no  Oregon
11 appellate  court  or  Ninth  Circuit  cases  interpreting  the  Oregon
12 statute.   While  the  California  cases  were  strong  persuasive
13 authority for defendants, it does not make plaintiffs' pursuit of
14 claims based on Oregon's statute, objectively unreasonable.

15      D.  O.R.S. 20.075(1)(f)

16      Defendants state that in early June 2005, plaintiffs' counsel
17 communicated a settlement offer of $500,000 to defense counsel.  In
18 late  June  2005,  defense  counsel  told  plaintiffs'  counsel  that
19 defendants would be interested in offering free radio advertising
20 to plaintiffs as a way of settling the case.  In early July 2005,
21 defense counsel told plaintiffs' counsel that the offer included
22 several  thousand  dollars  of  radio  advertising  as  well  as  the
23 opportunity for plaintiff John Gardner to appear on the Tom Martino
24 show to discuss his business and the situation with the customer
25 that  prompted  the  acts  forming  the  basis  of  the  litigation.
26 Plaintiffs rejected the offer.

27      I do not consider plaintiffs' rejection of defendants' offer
28 as a justification for the amount of fees sought by defendants.

1   The offers by both parties were made extremely early in the case.

2   While neither offer was unreasonable, I note that defendants' offer

3   failed to include any monetary damages whatsoever, making it more

4   likely that plaintiffs would reject it.  Plaintiffs' conduct was

5   not unreasonable.  One can understand why a business in plaintiff

6   Mt. Hood Polaris's position might not relish the uncontrolled

7   discussion of these issues on the air with defendant Martino.

8        Lastly, I place little weight on this factor given the policy

9   expressed in both Federal Rule of Civil Procedure 408 and Oregon

10  Evidence Code Rule 408.  As explained in the Advisory Committee

11  Notes to the federal rule, public policy favoring the compromise

12  and settlement of disputes is the basis for the rule which provides

13  that compromise and offers to compromise are not admissible to

14  prove liability.  Fed. R. Evid. 408, Advisory Comm. Notes to 1972

15  Proposed Rule.  Although defendants do not offer the evidence of

16  settlement proposals to prove liability, the public policy cautions

17  against putting too much weight on this factor, especially in the

18  context of an Anti-SLAPP fee motion.

19  III.  O.R.S. 20.075(2) Factors

20       Several of these factors present no issue in this case:  the

21  attorney's fees for all defense counsel were fixed, neither firm

22  had a long-standing professional relationship with their respective

23  clients, and no unusual time limitations were imposed by the

24  clients or the circumstances of the case.  It also appears that

25  defense counsels' employment by defendants in this case did not

26  preclude counsel from taking other cases.  O.R.S. 20.075(2)(b),

27  (e), (f), (h).

28       The remaining factors to consider are:  the time, labor, and

11 - FINDINGS & RECOMMENDATION

skill required and difficulty of issues under (2)(a), the fee customarily charged in the locality for similar legal services under (2)(c), the amount involved in the controversy and the results obtained under (2)(d), and the experience, reputation, and ability of the attorney performing the services under (2)(g). The time, labor, skill, and difficulty of issues is appropriately considered along with the amount involved and the results obtained in an assessment of the reasonableness of the number of hours. The fee customarily charged in the locality and the experience, reputation, and ability of the attorney involved are appropriately considered together in an assessment of the reasonable hourly rate.

A.  Initial Motion

1.  Reasonable Number of Hours

In their initial motion, Martino and Westwood seek fees for 233.4 hours of time Hinkle spent on the case. They do not seek fees for 3.8 hours of time Hinkle spent on preliminary matters, for 9.2 hours spent by an associate attorney, or 1.3 hours spent by a litigation assistant.

Bosworth seeks time for 62.1 hours he spent from the inception of the case until October 18, 2005, when he spent time finalizing Clear Channel's response to plaintiff's objections to the Findings & Recommendation.

I have carefully examined Hinkle's Declaration and Bosworth's Declaration which contain all the time entries. I have segregated this time into five categories: (1) drafting of motions, memoranda, declarations, or reviewing such filings by the plaintiff or co-defendants; (2) legal research; (3) factual investigation; (4) formal discovery; and (5) other, including time spent

12 - FINDINGS & RECOMMENDATION

conferring with co-counsel, communicating with opposing counsel, communicating with clients, etc.

Both counsel have done a very good job of recording time spent on individual tasks and there is no serious "block billing" problem. Occasionally, time that I segregated into two separate categories was not separately recorded as such by counsel. I have taken the liberty of dividing that time using my judgment.[2]

The amount of time expended by counsel in the five categories is as follows: (1) 130.8 hours by Hinkle and 15.6 hours by Bosworth in drafting of motions, memoranda, declarations, or reviewing the same filed by the opposing party or co-defendant; (2) 58.1 hours by Hinkle and 31.1 hours by Bosworth on legal research; (3) 22.6 hours by Hinkle and 8.3 hours by Bosworth on factual investigation; (4) 9.6 hours by Hinkle on formal discovery; and (5) 18.5 hours by Hinkle and 7.1 hours by Bosworth on "other," including time spent conferring with co-counsel, communicating with

---

[2] For example, on June 3, 2005, Hinkle spent 1.2 hours on reviewing an email from opposing counsel, communicating with opposing counsel by phone regarding a settlement demand, and reviewing case citations. Hinkle did not further segregate the time. I awarded 1.0 hour to legal research based on the fact that Hinkle reviewed case citations and his email from opposing counsel related to her legal argument regarding the relevance of a Ninth Circuit case. I attributed 0.2 hour to "other" as a communication with opposing counsel. Dec. 23, 2005 Hinkle Declr. at p. 12.

Another example is found on January 30, 2006, in Bosworth's records. There, Bosworth states he spent 1.7 hours reviewing and researching plaintiff's reply memorandum in support of plaintiff's motion to amend. Apr. 18, 2006 Bosworth Declr. at p. 5. In my calculations, I allotted 0.9 hours to reviewing the memorandum and 0.8 hours to research.

13 - FINDINGS & RECOMMENDATION

opposing counsel, and communicating with clients.[3]

Defendants argue that "[p]reparing and responding to a Special Motion to Strike under the anti-SLAPP statute requires virtually the same degree of time and effort on the part of all parties as does preparation for a trial."  Martino and Westwood Mem. at p. 7. Defendants contend that the Amended Complaint presented a number of complicated legal issues that needed to be addressed in the dismissal motion, and that a thorough factual investigation was required as well.

As plaintiffs note, contrary to defendants' representation that a Special Motion to Strike requires preparation in the magnitude of trial preparation, the statute is intended to avoid that level of time and expense.  The purpose of the statute is to allow early dismissal of claims.  Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 837 n.7 (9th Cir. 2001); see also Vess, 317 F.3d at 1109.

By expressly stating that an Anti-SLAPP statute motion to

---

[3]  My calculation of the total numbers for Bosworth, 62.1, is the same as what Clear Channel seeks in its motion.  My calculation for the total number for Hinkle, 239.6, is 6.2 hours more than the 233.4 hours Martino and Westwood seek.  I cannot explain the discrepancy.  I have performed my calculations twice, double checking them against the time entries, and cannot find a source of error.  I note that on at least one occasion, I found a time keeping error by Hinkle that resulted in an additional hour claimed, but not documented as worked.  Dec. 23, 2005 Hinkle Declr. at p. 13 (time entry for July 2, 2005 shows 6.2 hours on revising and editing the motion and 2.3 hours on research, for a total of 8.5 hours, but the total time claimed is 9.5 hours). While this error would tend to support a total number of hours sought by these defendants higher than my calculations, I note this error only to underscore that even the most perfect time keeping system, and performance of calculations, is not error free.

14 - FINDINGS & RECOMMENDATION

strike is to be treated as a motion to dismiss, and by expressly stating that discovery is stayed while the motion is pending, the Oregon Legislature has indicated that the motion is a tool to dispose of lawsuits as a matter of law, early in the proceeding, before a great deal of time and money has been expended.  O.R.S. 31.150(1) (the special motion to strike is to be treated as a motion to dismiss under ORCP 21A); O.R.S. 31.152(2) (all discovery in the proceeding is stayed pending resolution of the motion).

In contrast to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), an Anti-SLAPP motion to strike does require some evidentiary investigation and presentation.  It is the plaintiff responding to the motion, however, who has the laboring oar.  A defendant's burden is simply to make a prima facie showing that the claims to which the motion are directed arise out of one of the categories of civil actions described in O.R.S. 31.150(2).  O.R.S. 31.150(3).  If a defendant meets that burden, the burden shifts to the plaintiff to show, by substantial evidence supporting a prima facie case, that there is a probability the plaintiff will prevail on the claim.  Id.

In total, defendants spent more than thirty hours on factual investigation.  While some appears reasonable (for example, listening to the tape recording of the broadcast), other time was not related to the motion arguments (for example, time spent investigating the radio affiliates and hours of broadcast).

Defendants point to several legal arguments addressed in the briefing, including whether the broadcast was speech or conduct, whether the statements were fact or opinion, whether the statements were capable of a defamatory meaning, and whether a corporation can

15 - FINDINGS & RECOMMENDATION

1   bring a false light invasion of privacy claim, that required
2   research.  Defendants also note that plaintiffs' stated intention
3   to file a motion to strike Feroglia's declaration which was
4   submitted by defendants in support of their motion, required
5   research regarding hearsay issues, and that plaintiffs' opposition
6   memorandum raised additional legal issues.

7       Defendants' arguments were well researched and thoroughly
8   briefed.  Nonetheless, by my calculations, defendants spent
9   approximately 85 hours on legal research and over 130 hours on the
10  briefing (excluding time spent on the attorney fee motion).  I
11  recognize that a second round of briefing was necessitated by the
12  case assignment to a Magistrate Judge.  I also recognize that there
13  were numerous legal issues requiring research and briefing.
14  However, spending the equivalent of more than five weeks of full-
15  time work researching, preparing, and briefing the motion is
16  unreasonable for any attorney, especially ones who seek to justify
17  hourly rates of $310 and $360 per hour.[4]

18      As plaintiffs note, defendant Westwood had recently litigated
19  the issue of whether a plaintiff's claim, brought as a result of
20  statements made during an on-air radio broadcast, was based on an
21  act in furtherance of the defendant's right of petition or free
22  speech and thus, subject to dismissal under California's Anti-SLAPP
23  statute, on which the Oregon statute is based.  Ingels v. Westwood
24  One Broadcasting Servs, Inc., 129 Cal. App. 4th 1050, 28 Cal Rptr.
25  3d 933 (2005).  Furthermore, Hinkle himself had recently litigated

26  ────────────────

27      [4]  I note that $360 per hour is $1 every 10 seconds.  Such
    an hourly rate demands extraordinary efficiency in handling a
28  case.

16 - FINDINGS & RECOMMENDATION

1   an Oregon Anti-SLAPP motion to strike in a case in Multnomah County

2   Circuit Court, and other partners in his firm had also recently

3   litigated similar issues in another Anti-SLAPP motion to strike in

4   another case in that court.  See Sept. 19, 2006 Findings & Rec. at

5   pp. 10-11 (citing to those cases in connection with discussion of

6   "public issue/issue of public interest").  Clearly, Westwood and

7   Hinkle should have benefitted from the previous research done by

8   Westwood and by Hinkle and his law firm, resulting in fewer hours

9   needed for researching the claims in this case.

10      Additionally, several of the issues may have appeared complex,

11  but were only superficially so.  For example, defendants note that

12  there were "several questions relating to causation and damages

13  with respect to the interference with economic relations claims

14  asserted by the corporate plaintiff."  Martino and Westwood Mem. at

15  p. 8.  But, such issues are more accurately depicted as garden

16  variety tort claim questions, not requiring weeks of research.

17  Damages questions are of little importance in resolving the motion.

18      Another example is the issue of whether the statements during

19  the broadcast were fact or opinion or capable of a defamatory

20  meaning.  As Judge Hogan remarked in the Pipes case:

21          The First Amendment issue was simply whether a particular
            statement is capable of defamatory meaning, or whether it
22          is properly construed as opinion, and therefore protected
            by the First Amendment.  This issue often arises in
23          defamation cases.  The availability of a special motion
            to strike was an unusual legal issue, although the
24          application of the special motion to strike involved
            fairly straight forward issues of statutory
25          interpretation.

26  Pipes, 2004 WL 1403007, at *3.  The same can be said in this case.

27  These issues frequently arise in defamation cases and should not

28  require the amount of time expended here.

17 - FINDINGS & RECOMMENDATION

1     Defendants also seek fees for 2.9 hours spent researching the
2     citation of unpublished California appellate decisions and another
3     3.6 hours for drafting the portion of defendants' reply brief on
4     this topic.  Even disregarding the fact that this Court is unlikely
5     to rely on an unpublished appellate decision from any jurisdiction
6     and thus accepting that a brief look at this issue may have been
7     warranted, spending almost three hours to research such
8     straightforward procedural rules of minimal importance is
9     unreasonable.  The additional 3.6 hours spent drafting that portion
10    of the brief is unconscionable considering that it resulted in a
11    single paragraph of seventeen lines of text.  All told, that
12    seventeen lines of text results in a claim for $2,340.  A single
13    sentence suggesting that the Court not put any weight on the
14    unpublished appellate decision from a non-controlling jurisdiction
15    would suffice.

16    As noted above, Oregon's Anti-SLAPP statute provides that
17    discovery is stayed upon the filing of a special motion to dismiss.
18    O.R.S. 31.152(2).  Martino and Westwood filed their motion on July
19    8, 2005.  Yet, after that date, Hinkle spent more than eight hours
20    drafting interrogatory and document requests.  While Hinkle may
21    have thought it prudent to prepare the discovery requests,
22    especially given a Ninth Circuit case holding that the similar
23    California statutory provision staying discovery did not apply in
24    federal court, that does not mean it is reasonable to shift the
25    expense for discovery requests that were prepared, but apparently
26    never served, to the plaintiffs in this case.

27    Bosworth and his firm spent approximately 46.7 hours
28    researching and briefing the Anti-SLAPP motion, including time

18 - FINDINGS & RECOMMENDATION

spent reading plaintiffs' and co-defendants' memoranda, and time spent at oral argument and responding to plaintiffs' objections to the Findings & Recommendation.[5]  Clear Channel's initial motion was four lines of text and consisted solely of joining the motion, memorandum, and declarations filed by Martino and Westwood.  Clear Channel's reply memorandum was five pages long.  Its response to plaintiffs' objections to the Findings & Recommendation was five lines of text, consisting solely of  joining what had already been filed by Martino and Westwood in response to plaintiff's objections.  Thus, Clear Channel seeks over $14,000 for what amounts to five pages of original briefing.  Even considering the time needed to review the filings of the other parties and to attend oral argument, the time expended is unreasonable.

Certainly defense counsel achieved an excellent result for their clients:  early dismissal of the entire case.  And, the amount in controversy was significant.  However, as illustrated by the above-recited examples, I find that defense counsel, especially one who has expertise in First Amendment, libel, and privacy issues, and the other who filed two "me too" memoranda, seek reimbursement for a clearly unreasonable number of hours.

2.  Reasonable Hourly Rate

Hinkle's 2005 billing rate was $360 per hour.  Bosworth's was $310 per hour.  Both attorneys submit declarations regarding their experience, expertise, and comparable rates in the relevant Portland legal community.

---

[5]  This does not include the additional 15.4 hours Bosworth spent on factual investigation or communicating with co-defense counsel, opposing counsel, and his client.

19 - FINDINGS & RECOMMENDATION

1    Plaintiffs concede that "the experience, reputation and
2    ability of Mr. Hinkle and Mr. Bosworth are beyond challenge."
3    Pltfs' Opp. at p. 4. But, plaintiffs note, while clients are free
4    to employ a senior attorney to perform certain functions, without
5    regard to cost, the court's job is to consider whether the billing
6    rate was reasonably necessary to perform those functions. In some
7    cases, plaintiffs suggest, the same result may be achieved by
8    having a more junior associate with a lower hourly billing rate,
9    whom the time records show was familiar with the case, perform the
10   legal research and prepare the drafts of the briefs under the
11   direction of the more senior attorney.

12   Plaintiffs also note that defendants' requested hourly rates
13   are based on those of corporate commercial litigators. Plaintiffs
14   argue that while the attorneys involved in this case may indeed
15   specialize in that area, this case was not corporate commercial
16   litigation. Rather, this was ordinary tort litigation involving
17   claims of defamation, false light invasion of privacy, and
18   intentional interference with economic relations and advantage.
19   The pivotal issue was whether the speech at issue was
20   constitutionally protected.

21   As the parties note, this Court starts its analysis of the
22   reasonable rate by looking to the Oregon State Bar Economic
23   Survey[6]. Hinkle notes that the OSB Economic Survey shows that in
24   2002, a Portland lawyer with over 30 years experience with a
25   billing rate of $337 was in the 95th percentile. A Portland

26   _____

27   [6] Available at:

28   www.osbar.org/surveys_research/econsurv02/econsurvey02.html.

20 - FINDINGS & RECOMMENDATION

business/corporate litigator in the 95th percentile had a $333 hourly rate. Hinkle further states that in 2002, his billing rate was $305 per hour, putting him within the range of market rates as shown in the OSB Economic Survey.

Assuming, in 2002, that a Portland lawyer with more than 30 years experience had a 95th percentile billing rate of $335 per hour, that rate for 2005, adjusted for inflation[7], would be approximately $364 per hour, about what Hinkle charges. Bosworth's 2005 rate of $310 per hour is between the $275 rate in 2002 for the 75th percentile of Portland lawyers with more than 21 but less than 30 years of experience, and the $320 95th percentile rate for those lawyers. Adjusted for inflation, that range in 2005 would be approximately $299 to $348.

While the requested rates are within the market range seen in the OSB Economic Survey, that is not conclusive of their reasonableness, especially in the context of a fee-shifting award. First, I agree with plaintiffs that while these practitioners are regarded as exceptional corporate commercial litigators, this particular case was not of that nature. It was basic tort litigation with a constitutional issue often seen in the context of defamation claims. Thus, the more appropriate OSB Economic Survey reference is the rates for general civil litigation defense by Portland practitioners. In 2002, the average rate for this category was $205, the median was $195, the 75th percentile rate

---

[7] As seen in the Bureau of Labor Statistics website, the Consumer Price Index (Urban) for All Items shows an average inflation rate of 1.9% for 2003, 3.3% for 2004, and 3.4 percent for 2005. Available at: ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt.

21 - FINDINGS & RECOMMENDATION

was $250, and $300 was the rate for the 95th percentile.  Adjusted
for inflation, the 2005 rates would be $272 to $327 for the 75th to
95th percentiles.

Second, I agree with plaintiffs about the use of a senior
attorney in place of a less experienced, but nonetheless competent
junior counsel.  This touches upon my primary problem with this fee
petition.  A highly seasoned specialist, by virtue of his or her
experience, should handle the case more efficiently and with fewer
hours needed for research and preparation of the motion than a less
experienced, but competent junior lawyer.  Thus, if the clients and
the attorneys, Hinkle and Bosworth, want to have the senior lawyers
work up the case themselves, I expect to see fewer hours billed
than would be reasonably expended by a more junior attorney at a
lower hourly rate.  The problem here is that the requested amount
is based on an exceptionally high hourly rate _and_ an exceptionally
high number of hours considering the tasks at hand.  In my opinion,
neither the requested rates, nor the requested hours are reasonable
taken together.

### 3.  Reasonable Fee for Initial Petition

As noted above, together defendants seek fees for
approximately 295.5 hours spent on the case through the time the
filing of their initial fee petitions in December 2005.  In _Pipes_,
the attorneys sought fees for 265.1 hours of time which Judge Hogan
determined was unreasonable.  The cases appear to be similar in
that both involved fairly straightforward tort claims with an
additional First Amendment issue.  Both involved motions to strike
made under Oregon's Anti-SLAPP statute.  _Pipes_ also included a Rule
12(b) motion to dismiss.  Both cases also raised the applicability

22 - FINDINGS & RECOMMENDATION

of the Anti-SLAPP statute in federal court and both cases included a service-related issue (in the instant case, plaintiffs challenged the timing of the motion to strike by Clear Channel because it was filed more than sixty days after service of the original Complaint). Finally, the briefing in both cases was extensive.

I recognize that Judge Hogan issued his opinion in June 2004, two years ago. I also recognize that this case involved some issues not involved in Pipes such as plaintiffs indicating their intent to move to strike Feroglia's declaration, and more importantly, a second round of briefing necessitated by the original Magistrate Judge case assignment. Thus, I conclude that a fee higher than the $5,000 awarded by Judge Hogan is required here.

Based on all of the O.R.S. 20.075 factors discussed above, and on my independent assessment of the reasonableness of the requested fees, I conclude that $20,000 in fees is reasonable for the time spent up to and including the filing of the initial fee petitions by all defendants in December 2005. Since Bosworth's requested $19,251 is approximately 18.6% of the total sought by all defendants, I award Bosworth 18.6% of the $20,000, or $3,720, and the remainder, or $16,280, to Hinkle.

B.  Supplemental Motion

As indicated above, following the December 13, 2005 Judgment, plaintiff Mt. Hood Polaris moved to amend the order and judgment and to amend the complaint. The motion to amend was brought pursuant to Rules 52(b) and 15(a). Defendants filed separate responses to the motion in early January, arguing, inter alia, that Rule 52(b) was inapplicable and that Mt. Hood could not rely on

23 - FINDINGS & RECOMMENDATION

Rule 15(a) after entry of judgment. Mt. Hood filed a reply memorandum in support of its motion and simultaneously filed an amended motion to amend pursuant to Rule 60(b).

In a February 8, 2006 Scheduling Order, Judge Brown noted that Mt. Hood had failed to seek leave of the court to amend the motion to amend and had failed to comply with Local Rule 7.1(c), requiring the motion to be accompanied by a separately filed legal memorandum or brief. Judge Brown nonetheless allowed Mt. Hood to file the amended motion. She then established deadlines for the filing of a memorandum in support by plaintiffs and for defendants to file responses. She set an oral argument date in March 2006. Defendants, having already filed responses to the original motion to amend, were now obligated to file additional responses to the new arguments raised by Mt. Hood in the amended motion.

Defendants ultimately prevailed when, on April 12, 2006, Judge Brown denied Mt. Hood's motion to amend and its amended motion to amend. As Judge Brown explained in her Opinion, Mt. Hood sought to set aside the judgment only if its motion to amend the complaint was allowed. Apr. 12, 2006 Op. & Ord. at p. 6. Mt. Hood's proposed Second Amended Complaint contained a new claim for intentional interference with economic relations.

Although Mt. Hood had brought a similar claim in its Amended Complaint which was challenged in the Special Motions to Strike, the new proposed claim alleged that defendants inflicted economic harm on Mt. Hood for various improper purposes instead of relying on the previous allegations of improper means. As explained in the September 19, 2005 Findings & Recommendation, the improper means at issue in the Amended Complaint were the statements regarding

24 - FINDINGS & RECOMMENDATION

plaintiffs' alleged lying.  Sept. 19, 2005 Findings & Rec. at p. 24.  I concluded that the claim must be stricken under the Anti-SLAPP special motion to strike because the challenged statements were protected by the First Amendment.  By relying on various improper purposes, Mt. Hood was clearly trying to assert a claim in the proposed Second Amended Complaint that would be outside the realm of claims subject to the Anti-SLAPP statute.

Judge Brown concluded that the proposed new claim would be futile because "[t]his Court, . . ., already has held the broadcast is conduct in furtherance of the constitutional right of free speech for which the Oregon Legislature had provided protection in Oregon Revised Statute § 31.150."  Apr. 12, 2006 Op. & Ord. at p. 9.  Even though Mt. Hood relied on improper purposes, the claim was still based on the broadcast.  She noted that if the Court allowed the motion to further amend the claim, defendants confirmed that they would again file a motion to strike it under the Anti-SLAPP statute.  Id.  Judge Brown concluded that the Court, "in line with its earlier reasoning, again would grant such a motion."  Id.  Thus, she denied Mt. Hood's post-judgment motions.  Id. at pp. 9-10.

Hinkle seeks $28,984.50 for the time spent on the case beginning January 1, 2006, through the filing of the supplemental fee petition on April 14, 2006.  In his declaration, he states that he seeks fees for 72.2 hours of his time, and 14 hours spent by associates in his office, for a total of 86.2 hours.  Apr. 14, 2006 Hinkle Declr. at ¶ 3.

Bosworth seeks $17,257.50 for the time spent on the case from January 3, 2006, through the April 18, 2006 filing of his

25 - FINDINGS & RECOMMENDATION

1  supplemental fee petition.  In his declaration, he states that he
2  seeks fees for 35.7 hours of his time, and a total of 32.7 hours
3  spent by three associates in his office, for a total of 68.4 hours.
4  Apr. 18, 2006 Bosworth Declr. at ¶ 7.

5      Plaintiffs oppose the award of any time spent on the post-
6  judgment litigation because O.R.S. 31.152 limits fees to those
7  expended on a motion to strike under the Anti-SLAPP statute and the
8  post-judgment motions in this case concerned a motion to amend to
9  assert a new claim.  I reject this argument because while
10 plaintiffs' proposed new claim was presented in a motion to amend
11 the judgment and to allow the filing of a new complaint, the
12 pivotal issue addressed by Judge Brown in her April 12, 2006
13 Opinion was the futility of allowing the proposed amendment given
14 that it would not survive a motion to strike it under the Anti-
15 SLAPP statute.  Thus, the fees generated by defendants on this
16 issue would have been generated either in the context of the motion
17 to amend or on a second motion to strike.  Accordingly, I find it
18 reasonable to award them.

19     Although the post-judgment time expended by defense counsel
20 was necessitated by Mt. Hood's filing its motion to amend, and was
21 then compounded by Mt. Hood's filing an amended motion to amend
22 after defendants had already responded to the first motion to
23 amend, defendants' hours are again, unreasonably high.  For
24 example, while Bosworth may have lowered expenses by using
25 associates to perform some research and drafting, and this
26 invariably requires some coordination between the partner and the
27 associate, it is not reasonable to expect plaintiffs to pay for
28 both the time an associate spends with Bosworth and the time that

26 - FINDINGS & RECOMMENDATION

associate then spends conferring with even more junior associates, or the time the associates spend conferring with each other.  <u>See</u>, <u>e.g.</u>, Apr. 18, 2006 Bosworth Declr. at pp. 3-4 (0.4 hours on January 3, 2006 spent by Kono meeting with Bosworth and 0.4 hours on January 3, 2006 spent by Kono meeting with Usui and Colton; 0.2 hours on January 4, 2006 spent by Colton meeting with Usui and 0.2 hours on January 4, 2006 spent by Usui meeting with Colton).

Another example of excessive hours is the time spent by Hinkle on basic research related to the standards for motions to amend under Rules 59 and 60.  By my calculation, Hinkle and his associate spent more than 15 hours on the research and drafting of these issues which should be basic to any experienced federal court litigator.  <u>See</u>, <u>e.g.</u>, Apr. 14, 2006 Hinkle Declr. at pp. 5-6, 8 (4.5 hours by Hinkle on January 1, 2006 for research on standards for amending under Rules 52 and 59 and drafting portion of memorandum; 3.5 hours by associate on January 1, 2006 on "researching legal issues" and drafting memorandum; 5.3 hours by Hinkle on January 2, 2006 on relationship between Rule 52(b) and Rule 59 and standards for amending under Rule 59, plus drafting memorandum; 2.3 hours by Hinkle on January 26, 2006 on researching the standards for setting aside a judgment under Rule 60; some portion of 2.8 hours by Hinkle on February 18, 2006 on research regarding grounds for setting aside judgment).

Additionally, Hinkle and his staff spent at least 10, and likely closer to 15[8], hours on legal research regarding the

---

[8]  The declaration contains entries showing time was spent on more than one task or researching more than one issue.  For example, on February 18, 2006, Hinkle spent 2.8 hours working on

27 - FINDINGS & RECOMMENDATION

improper purpose element of the intentional interference with economic relations claim.  See, e.g., Apr. 14, 2006 Hinkle Declr. at pp. 7-8 (3.4 hours by associate on January 30, 2006 spent on legal research regarding the improper purpose element of an intentional interference claim; 7.1 hours by the associate on January 31, 2006 spent on the same research and drafting a memorandum on this issue; some portion of 2.8 hours by Hinkle on February 18, 2006 spent on legal research regarding the improper purpose prong of an intentional interference claim; some portion of 9.5 hours by Hinkle on February 20, 2006 spent on improper purpose research).  This is an unreasonably high number of hours for this task.

On balance, considering all of the O.R.S. 20.075 factors discussed in the previous section, and based on my independent assessment of the reasonableness of the hours worked and the hourly rates sought, I conclude that $7,500 is a reasonable fee for the time spent by defendants litigating the post-judgment motions.  The amount sought by Bosworth is approximately 37.3 percent of the total sought by all defendants.  Thus, I award 37.3 percent of $7,500, or $2,797.50 to Bosworth, and the remainder, or $4,702.50, to Hinkle.

CONCLUSION

Defendants' motions for attorney's fees (#49, #54), and

---

the response memorandum and performing legal research on two issues, one of which was the improper purpose issue.  On February 20, 2006, he spent 9.5 hours on the response memorandum, including research on two legal issues, one of which was the improper purpose issue.  The reference to fifteen hours is based on attributing one-third of the total time claimed for each of these days to the improper purpose research.

supplemental motions for attorney's fees (#77, #80), should be granted in part and denied in part.  Martino and Westwood should be awarded a total of $20,982.50 in attorney's fees.  Clear Channel should be awarded a total of $6,517.50 in attorney's fees.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due June 30, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due July 14, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this __15th__ day of __June_____, 2006.


                                    __/s/ Dennis James Hubel_____
                                    Dennis James Hubel
                                    United States Magistrate Judge

29 - FINDINGS & RECOMMENDATION